UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIANNE HICKS,

                    Plaintiff,

          -against-

LESLIE FEELY FINE ART, LLC and JOHN DOE,

                    Defendants.

**OPINION AND ORDER**

1:20-cv-1991(ER)

Ramos, D.J.:

      Abstract painter Marianne Hicks brings this action against Leslie Feely Fine Art, LLC (the "Gallery"), an art gallery located in New York City, and one of its buyers, John Doe, for conversion of a painting that the Gallery sold to Doe for $40,000 as a work of the renowned artist Friedel Dzubas.  Hicks alleges that she painted the work, not Dzubas, and further seeks replevin of it from Doe.  The Gallery now moves to dismiss the complaint pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure and under the equitable doctrine of laches.  For the reasons set out below, the Gallery's motion to dismiss pursuant to Rules 12(b)(1), 12(b)(5), 12(b)(6) is DENIED.  At this stage in the litigation, the Gallery's motion for dismissal under the doctrine of laches is also DENIED as premature.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A. Facts Alleged in the Instant Complaint

Hicks is an abstract painter who currently resides in Pennsylvania.  Compl. ¶ 16.  Dzubas was a renowned abstract expressionist painter whose award-winning work was widely celebrated in the 1950s and 1960s and whose paintings have sold for hundreds of thousands of dollars.  *Id.* ¶ 24-25.  Hicks met Dzubas in approximately 1979 when Dzubas was 65 years old and Hicks was a 26-year-old student at the School of the Museum of Fine Arts in Boston.  *Id.* ¶ 27, 29.  The pair entered a romantic relationship that would span 11 years.  *Id.* ¶ 30.

In approximately 1981, Hicks allegedly created a painting (the "Painting") that is the object of the instant suit.  *Id.* ¶ 31.  Approximately one year later, Hicks and Dzubas began living together in Cambridge, Massachusetts.  *Id.* ¶ 35.  Hicks brought the Painting, which they hung near the entrance of their home.  *Id.* ¶ 40.

Beginning in approximately 1990, Dzubas's health began to deteriorate due to Parkinson's disease.  *Id.* ¶ 42.  With his worsening condition, Dzubas's adult children became increasingly involved in his financial and personal affairs, encouraging him to end his relationship with Hicks and pursue a relationship with another partner.  *Id.* ¶¶ 44, 46.  In 1991, Hicks was driven out of the home she shared with Dzubas by his children and new partner.  *Id.* ¶¶ 9, 46.  According to Hicks, she was only able to bring her living necessities, bed, and clothing when she moved to her own apartment in Somerville, Massachusetts.  *Id.* ¶ 47.

Despite the move, Hicks continued to use the art studio connected to the Cambridge house she had shared with Dzubas until she was denied access to the studio space by Dzubas's children and his new partner.  *Id.* ¶¶ 49-50.  They gave Hicks one day to retrieve her belongings from the art studio.  *Id.* ¶ 52.  Hicks did not feel welcome in the main house and did not go inside

to retrieve the Painting.  *Id.* ¶ 52-53.  Thus, the Painting remained in the house following Hicks's departure.  *Id.* ¶ 53.

After Dzubas's death in 1994, the Painting was included among Dzubas's artwork as part of Dzubas's estate.  *Id.* ¶ 56.  A third party, Melinda Hatch, acquired the Painting in the process of settling Dzubas's estate in 2003.[1]  Wallace Decl., Exs. C-E.

On October 6, 2005, Hicks filed for bankruptcy.  Wallace Decl., Ex. A at 2.  Among her listed assets were 28 of her own paintings.  *Id.* at 6.  The market value of those paintings was listed as "unknown."  *Id.*

In 2017, the Painting was consigned to the Gallery for the purpose of displaying and selling the Painting.  Compl. ¶ 57.  The Gallery listed the Painting as a 1951 piece by Dzubas and, on May 18, 2017, sold the Painting to Doe for $40,000.  *Id.* ¶¶ 14, 60; Feely Decl. ¶ 5, Ex. A.

Hicks, who now lives in Pennsylvania, alleges that the Painting was created completely independently from, and without assistance by, Dzubas.  Compl. ¶ 32.  Dzubas's studio assistant, Wesley Frantz ("Frantz"), attests that the Painting could not have been painted by Dzubas in 1951 because of the type of paint used and the specific technique used to apply the paint to the canvas.[2]  Frantz Aff. ¶¶ 12, 22.  Hicks further alleges that she at no point relinquished ownership of the Painting to Dzubas, his children, or any other entity.  Compl. ¶ 54.

---

[1] Hatch's possession of the Painting is inferred from the court's opinion in *Hatch v. Goldglit*, No. 00–P–122, 2003 WL 1961073, at *1 (Mass. App. Ct. Apr. 28, 2003) where, according to Dzubas's will, Hatch was bequeathed a choice of three paintings from his personal collection.  While the Gallery attached documentation of Hatch's litigation with Dzubas's estate and also named Hatch as the consignor of the Painting during a pre-motion conference, nothing in the motions or attached declarations expressly name Hatch as the consignor of the Painting or details how she came to possess the Painting.  *See* Wallace Decl., Ex.'s C-E; (Doc. 18 at 11, ln. 3-7).

[2] The Complaint attached an affidavit from Frantz, the studio assistant to Dzubas from 1980 to 1987.  Compl. ¶ 64; Frantz Aff., Ex. A, ¶ 8.  On a motion to dismiss, the court can consider documents attached to the complaint.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[O]n a motion to dismiss, a court may consider

### B. Procedural History

On March 5, 2020, Hicks filed the instant Complaint against the Gallery and John Doe asserting two causes of action:  (1) conversion against the Gallery and Doe, and (2) replevin against Doe.  Complaint (Doc. 1).  On March 20, 2020, Hicks filed an Affidavit of Service sworn by Ricardo Delpratt.  Delpratt Aff. (Doc. 7).  According to Delpratt's affidavit, a true copy of the Complaint and Summons was served on John Igor who "informed [Delpratt] that he is an agent authorized by appointment to receive service at that address."  *Id.*  Delpratt further described John Igor as "a white male, approximately 75 years of age, [who] stands approximately 5 feet 8 inches tall, weighs approximately 210 pounds with gray hair."  *Id.*

On June 8, 2020, the Gallery filed the instant motion to dismiss accompanied by declarations by Judith Wallace and Leslie Feely in support of dismissal, which included the following attachments:  (1) records from Hicks's 2005 bankruptcy proceeding, (2) records of the Dzubas Estate litigation with Hatch, (3) Hicks's response to jurisdictional discovery regarding any sales of her artwork, and (4) the Gallery's redacted invoice for the sale of the Painting.  (Docs. 20-23).

The Feely Declaration details circumstances surrounding Delpratt's service of process at the Gallery's place of business, including a sign on the gallery door which read:  "Leslie Feely Gallery is hosting Carlo Cristi for Asia Art Week.  We will be closed from March 10 - March 19th.  If you have any immediate questions you can reach us at [provided number]."  Feely Decl. ¶ 7 (Doc. 22).  The Feely Declaration also stated that "John Igor is not an employee, contractor or authorized agent of Leslie Feely Fine Art, LLC."  Feely Decl. ¶ 8 (Doc. 22).

---

documents attached to the complaint as an exhibit or incorporated in it by reference . . . .") (internal quotations omitted).

The Gallery moved to dismiss the Complaint on four grounds:  (1) lack of subject matter jurisdiction, (2) lack of personal jurisdiction, (3) failure to state a claim, and (4) laches.  Def.'s Mot. to Dismiss (Doc. 23).  On July 8, 2020, Hicks opposed the Gallery's motion.  Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 31).  Hicks attached to the opposition a declaration detailing the year-long correspondence between the parties over the disputed authorship of the Painting.  Wasil Decl. ¶ 3-4 (Doc. 32).  The Wasil Declaration included as an exhibit an email from March 2, 2020 from Hicks to the Gallery informing the Gallery of Hicks's intent to file suit.  Wasil Decl., Ex. A (Doc. 32-1).

## II.     LEGAL STANDARDS

### A.  Motion to Dismiss pursuant to Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case.  Fed. R. Civ. P. 12(b)(1).  The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists.  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings may be considered by the court to resolve the disputed jurisdictional fact issues.  *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) (internal citation omitted); *see also Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113).  When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not necessarily draw inferences from the complaint favorable to

the plaintiff.  *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing

*Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

Where, as here, a party also seeks dismissal on Rule 12(b)(6) grounds, the court must

consider the Rule 12(b)(1) motion first, *Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820

F. Supp. 2d 490, 499 (S.D.N.Y. 2011), *aff'd*, 496 F. App'x 131 (2d Cir. 2012) (internal citations

omitted), because "disposition of a Rule 12(b)(6) motion is a decision on the merits, and

therefore, an exercise of jurisdiction."  *Chambers v. Wright,* No. 05 Civ. 9915 (WHP), 2007 WL

4462181, at *2 (S.D.N.Y. Dec. 19, 2007) (quoting *Magee v. Nassau Cnty. Med. Ctr.,* 27 F. Supp.

2d 154, 158 (E.D.N.Y. 1998)).

### B.  Motion to Dismiss pursuant to Rule 12(b)(5)

In considering a motion to dismiss pursuant to Rule 12(b)(5) for insufficient service of

process, a court may also look to matters outside the complaint to determine whether it has

jurisdiction.  *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).  "When

a defendant challenges the sufficiency of service pursuant to Rule 12(b)(5), the plaintiff bears the

burden of proving its adequacy."  *Id.*

To evaluate a 12(b)(5) motion, the Court looks to Rule 4, which governs service of

process.  Pursuant to Rule 4(m):

> If a defendant is not served within 120 days after the complaint is
> filed, the court—on motion or on its own after notice to the
> plaintiff—must dismiss the action without prejudice against that
> defendant or order that service be made within a specified time.  But
> if the plaintiff shows good cause for the failure, the court must
> extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  The Second Circuit has held that Rule 4 is to be construed liberally "'to

further the purpose of finding personal jurisdiction in cases in which the party has received

actual notice.'"  *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986) (quoting

*Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972)).  Incomplete or improper service

may lead a court to dismiss an action "'unless it appears that proper service may still be

obtained.'"  *Id.* (quoting *Grammenos*, 457 F.2d at 1070).

### C.  Motion to Dismiss pursuant to Rule 12(b)(6)

On a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as

true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's

favor.  *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008).  However, this

requirement does not apply to legal conclusions, bare assertions or conclusory allegations.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007)).  In order to satisfy the pleading standard set forth in Rule 8, a complaint must

contain sufficient factual matter to state a claim to relief that is plausible on its face.  *Id.* at 678

(citing *Twombly*, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."  *Id.*  Accordingly, a plaintiff is

required to support his claims with sufficient factual allegations to show "more than a sheer

possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are

'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation

marks omitted).

Although a plaintiff may plead facts alleged upon information and belief, "where the

belief is based on factual information that makes the inference of culpability plausible," *Arista*

*Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), such allegations must be

"'accompanied by a statement of the facts upon which the belief is founded.'"  *Navarra v.*

*Marlborough Gallery, Inc.*, 820 F. Supp. 2d 477, 485 (S.D.N.Y. 2011) (quoting *Prince v.*

*Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006)); *see also Williams v. Calderoni*, No. 11 Civ. 3020 (CM), 2012 WL 691832, at *7-8 (S.D.N.Y. Mar. 1, 2012) (finding pleadings on information and belief insufficient where plaintiff pointed to no information that would render his statements anything more than speculative claims or conclusory assertions).  A complaint that "tenders naked assertions devoid of further factual enhancement" will not survive a motion to dismiss under Rule 12(b)(6).  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted) (brackets omitted).

The question in a Rule 12 motion to dismiss "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiff's claims.  *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

## III.  DISCUSSION

### A.  The Gallery's Rule 12(b)(1) Motion

The Gallery maintains that Hicks cannot satisfy the jurisdictional amount required for diversity jurisdiction because she has failed to present competent evidence that she has ever sold a painting, let alone sold one for an amount over $75,000.  Def.'s Mot. to Dismiss 5-11.  In opposition, Hicks argues that the Court cannot determine to a legal certainty that her damages amount to less than the jurisdictional minimum.  Pl.'s Resp. to Def.'s Mot. to Dismiss 6.  Given

the *sui generis* nature of the property at issue, the Court agrees that it cannot determine to a legal certainty that the value of the Painting does not amount to $75,000 as a matter of law.

In order to invoke diversity jurisdiction under 28 U.S.C. § 1332, a plaintiff must demonstrate to a "reasonable probability that the claim is in excess of the statutory jurisdictional amount" of $75,000. *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (internal quotations omitted). The Second Circuit recognizes "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006). However, "[a] defendant may rebut that presumption by demonstrating to a legal certainty that the plaintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums." *Id.* (internal quotations omitted). *See also Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961) ("In deciding this question of good faith we have said that it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.") (internal quotations omitted). In further defining the legal certainty standard, the Second Circuit has held that "the legal impossibility of recovery must be so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim. If the right of recovery is uncertain, the doubt should be resolved . . . in favor of the subjective good faith of the plaintiff." *Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Trust Co. of Chi.*, 93 F.3d 1064, 1070 (2d Cir. 1996) (quoting *Tongkook*, 14 F.3d at 785-86).

Establishing legal certainty as a matter of law is thus a high bar for overcoming the presumption that the amount in controversy has been asserted in good faith. *See Klika v. Tuckahoe Police Org., Inc.*, No. 18-cv-5031 (NSR), 2020 WL 2097606, at *5, (S.D.N.Y May 1,

2020).  "Even where the allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted."  *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982)).

Guided by New York conversion law, the value of the goods at issue are generally determined at the time of the conversion.  *See Fleet Cap. Corp. v. Yamaha Motors Corp., U.S.A.*, No. 01 Civ. 1047 (AJP), 2002 WL 31174470, at * 26 (S.D.N.Y. Sept. 26, 2002) (quoting *Fantis Foods, Inc. v. Standard Importing Co.*, 402 N.E.2d 122, 125 (N.Y. 1980)).  However, "the New York courts have held that where the property converted is 'unique and irreplaceable . . . as are works of art,' the appropriate measure of damages corresponds to 'the value of the item at the time of trial.'"[3]  *Pagliai v. Del Re*, No. 99 Civ. 9030 (DLC), 2000 WL 122142, at *1 (S.D.N.Y. Jan. 31, 2000) (quoting *Hoffman v. Dorner*, 447 N.Y.S.2d 20, 22 (2d Dep't 1982).

The Gallery highlights that Hicks has provided no evidence that she has ever sold a painting, and the Gallery itself has been unable to find any evidence of sales by Hicks.  Def.'s Mot. to Dismiss 6.  The Gallery further cites Hicks's 2005 bankruptcy filings in which she averred that 28 pieces of her artwork were of "unknown" value.  Wallace Decl., Ex. A. at 6. Finally, the Painting sold for $40,000, well below the jurisdictional minimum.  Feely Decl. ¶ 5, Ex. A.

While the Gallery shows a lack of evidence of the Painting's value as a work by Hicks, the Gallery's proffer is not enough to rebut the presumption of good faith to a legal certainty.

---

[3] Additionally, the New York Court of Appeals has held that "in a replevin action, or in an action where restitution or specific performance is allowed, the measure of damages is the value at the time of the trial, on the theory that the true owner had a continuing right to possession of the painting and can be made whole only by return of the item or by payment of its value at the time of trial."  *Will of Rothko*, 392 N.Y.S.2d 870, 874 (1st Dep't 1977) (citing *Simon v. Electrospace Corp.*, 269 N.E.2d 21, 26 (1971).

The artwork at issue in this case is not one of the 28 pieces referenced in the 2005 bankruptcy filing, and a 15-year-old statement alleging unknown value to artworks not at issue is largely irrelevant.  Furthermore, stating that the value is "unknown" is not the same as asserting that their value is zero.  A lack of evidence *showing* value is not dispositive of a *lack* of value.

Artwork is *sui generis*, "unique and irreplaceable," *Will of Rothko*, 392 N.Y.S.2d 870, 874 (1st Dep't 1977).  The Southern District of New York in *Pagliai* found that the subject artwork was such a unique object that concluding "to a legal certainty that the plaintiff's claim is for less than the jurisdictional amount" was infeasible.  *Pagliai*, 2000 WL 122142, at *1.  There, the artwork had a sale price of $74,000 and a "hammer price" of $65,000.  *Id.*  The *Pagliai* Court held that Christie's auction price, which was less than the jurisdictional minimum, "[did] not conclusively determine damages from the conversion" and therefore the court "resolve[d] the uncertainty in favor of plaintiff's good faith in pleading damages in excess of $75,000."  *Id.*  In *Douglas v. Joseph,* 656 Fed. App'x 602, 605 (3d Cir. 2016), plaintiff claimed his $527,000 valuation of his eight paintings was based on comparable gallery and auction sales, though no evidence was provided that expressly showed the value of *his* work.  Accordingly, the Third Circuit found that the lack of appraisals was not enough to rebut plaintiff's good faith valuation of his artwork, holding that "[w]hile Douglas's paintings and supplies together may not be worth a total of $527,000, we cannot say that, to a legal certainty, they are not worth $75,000, and that is the proper test at this stage of the litigation."  *Id.*  Here, *Douglas* is persuasive.

In contrast, the cases upon which the Gallery relies are inapposite.  In *Stengel v. Black*, No. 03 Civ. 0495 (GEL), 2001 WL 1933612, at * 5 (S.D.N.Y. Aug. 30, 2004), plaintiff's suit to recover a 5.1-carat emerald was dismissed for failure to meet the jurisdictional amount.  However, *Stengel* is distinguishable because the *Stengel* Court reasoned that the value of the

emerald would be determined by the fair market value of the gem at the time of conversion, not at the time of trial like a unique piece of art. *See id* at *2. Secondly, Stengel's own initial estimate of the gem's worth was below the jurisdictional threshold. *Id.* at *5 ("[T]he best evidence presented that goes to the fair market value of this particular diamond at the time of the conversion is the price for which . . . a willing and knowledgeable buyer[] actually purchased it in November 2001 from Stengel, a willing and knowledgeable seller."). Not so here. Finally, the *Stengel* Court acknowledged that, when the value of an object is determined at trial, it "is a matter of speculation, [that] could conceivably allow for the exercise of jurisdiction even where the value of the property was less than the required jurisdictional minimum before the wrongful conversion took place." *Id.* at *2.

Therefore, due to the *sui generis* nature of the property at issue and the impossibility of determining to a legal certainty that the Painting will not meet the jurisdictional minimum at trial, the Gallery's motion to dismiss for lack of subject matter jurisdiction is denied.

### B. The Gallery's Rule 12(b)(5) Motion

The Gallery further argues that service was effected on an unknown person not affiliated with the Gallery and was therefore insufficient. Def.'s Mot. to Dismiss 12. Hicks counters that because service was reasonable under the circumstances, it was proper under New York law. Pl.'s Resp. to Def.'s Mot. to Dismiss 11-13. The Court finds that the Gallery has not sufficiently rebutted the presumption of proper service and therefore service on the Gallery was proper under the law.

Rule 4(m) requires that a plaintiff serve a copy of the complaint and summons within 120 days of filing the complaint. Fed. R. Civ. P. 4(m). The Second Circuit has recognized that "[u]nder the laws of New York, service on a corporation may be effected by tendering the

summons to, *inter alia*, a corporate director, officer, or managing or general agent." *Old Republic Ins., Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002) (citing N.Y. C.P.L.R. § 311(a)(1) (McKinney 2000)).

 "[A] process server may rely upon the corporation's employees to identify the individuals authorized to accept service." *Id.* (citing *Fashion Page, Ltd. v. Zurich Ins. Co.*, 406 N.E.2d 747, 751 (N.Y. 1980). When the process server has reasonably relied on the corporate personnel, "the defendant may not later complain that it lacked notice even if the complaint was mistakenly delivered to a person who was not authorized to accept service." *Id.*; *see also Fashion Page, Ltd.,* 406 N.E.2d at 752 ("[W]hen the corporation is regularly doing business in the State, it generally cannot be heard to complain that the summons was delivered to the wrong person when the process server has gone to its offices, made proper inquiry of the defendant's own employees, and delivered the summons according to their directions."). Furthermore, in New York, a process server's sworn statement is considered prima facie evidence of proper service. *Old Republic Ins.*, 301 F.3d at 57 (citing *NYCTL 1997-1 Trust v. Nillas*, 732 N.Y.S.2d 872, 873 (2d Dep't 2001). "A defendant's sworn denial of receipt of service, however, rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing." *Id.* No evidentiary hearing is required if the defendant "fails to swear to specific facts to rebut the statements in the process server's affidavits." *Id.* at 58 (internal quotations omitted).

Here, service was personally served on a John Igor on March 12, 2020. Delpratt Aff. According to the affidavit of service, Igor informed the process server that he was an agent authorized to receive service at the Gallery's business address. *Id.* The affidavit of service

described Igor as "a white male, approximately 75 years of age, [who] stands approximately 5 feet 8 inches tall, weighs approximately 210 pounds with gray hair." *Id.*

The Gallery attempts to rebut the presumption of proper service, stating that "John Igor is not an employee, contractor or authorized agent of Leslie Feely Fine Art, LLC." Feely Decl. ¶ 8. The Gallery further asserts that on March 12, 2020, the date of service, a sign was posted on the outside of the Gallery door stating: "Leslie Feely Gallery is hosting Carlo Cristi for Asia Art Week. We will be closed from March 10-March 19th. If you have any immediate questions you can reach us at [provided phone number]." *Id.* ¶ 7.

Considering the above circumstances, the Court finds that the process server reasonably relied upon Igor's self-identification as an authorized agent of the Gallery. Not only was Igor present at the Gallery's place of business, but he also affirmatively stated to the process server that he was an "Assistant" who was authorized by appointment to receive service at the Gallery's business address. Delpratt Aff. While the Gallery's sign indicated the Gallery was closed to the public, the sign does not conclusively state the Gallery space would be devoid of Gallery staff. Therefore, the Gallery's sign does not undermine the process server's reasonable reliance on Igor's affirmative response to being an authorized agent for the Gallery, which was further enforced by Igor's presence at the Gallery at a time when it was purportedly closed to the general public.

Moreover, while the Gallery's sworn statement rebuts Igor's employment and general affiliation with the defendant as an authorized agent, it fails to address the specific facts in the process server's affidavit regarding Igor's appearance or whether anyone by the name of John *or* Igor worked at the Gallery or was affiliated in any capacity. *See Garcia v. Maersk, Inc.,* No. 03-CV-5697 (FB), 2005 WL 1492380, at *3 (E.D.N.Y. June 24, 2005) (court held the defendant

failed to adequately rebut the presumption of valid service when the defendant's affidavits did not offer any specific facts to rebut physical description or other possible name variants of the individual who identified himself as an agent able to accept service on behalf of the defendant). The *Garcia* Court found that a defendant's sworn statement rebutting only the employment of the person served was not enough to overcome the presumption of valid service. *Id.* Because the Gallery has failed to adequately rebut the presumption of valid service, no evidentiary hearing is required.

The Court is also persuaded that the Gallery had adequate notice of Hicks's intent to file suit. "Though not dispositive of the question of adequacy of service of process, such notice is evidence that the legislative goal of fair notice, which underlies the rules of service of process, has been fulfilled." *Velez v. Vassallo*, 203 F. Supp. 2d 312, 323 (S.D.N.Y. 2002) (internal quotations omitted). In a sworn statement by Hicks's counsel, the Gallery and Hicks had corresponded for over a year regarding the disputed authorship of the Painting. Wasil Decl. ¶ 3. On March 2, 2020, three days prior to filing the Complaint, counsel for the Gallery was informed of Hicks's intent to file and was asked to accept service on behalf of the Gallery. Wasil Decl., Ex. A. The Gallery's counsel never responded. Wasil Decl. ¶ 5.

Given the Gallery's failure to adequately rebut the presumption of valid service and the clear notice of Hicks's intent to file a claim, the motion to dismiss for insufficient service is denied.

### C. The Gallery's Rule 12(b)(6) Motion

The Gallery and Hicks present two different conversion theories dependent on whether the Gallery was a "transferor" of the Painting, Def.'s Motion to Dismiss 12-14, or an "auctioneer" of the Painting, Pl.'s Resp. to Def.'s Mot. to Dismiss 13-15. The Court finds that

neither designation applies.  Nonetheless, Hicks has sufficiently stated a claim for conversion pursuant to New York law.

Because the Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), Hicks's conversion claim must be assessed under the applicable state law.  To state a claim for conversion under New York law, a plaintiff must demonstrate that they have "legal ownership or an immediate possessory right superior to that of defendants'" and that "the defendants exercised unauthorized dominion over the property to the exclusion" of the plaintiff's rights.  *Sea–Land Serv., Inc. v. Remington Rand Corp.*, No. 84 Civ. 177 (LBS), 1986 WL 8862, at *5 (S.D.N.Y. Aug. 7, 1986) *aff'd sub nom. Sealand Serv. Inc. v. Remington Rand Corp.*, 812 F.2d 713 (2d Cir. 1987) (citing *Gold Medal Products, Inc. v. Interstate Computer Servs., Inc.*, 80 A.D.2d 601, 600, 436 N.Y.S.2d 312, 313 (2d Dep't 1981)).  The New York Court of Appeals has held that "the wrongful exercise of dominion need not consist of a 'manual taking, on the defendants' part' but can occur by the defendants' 'assuming to sell and dispose of [the property] as their own.'"  *State v. Seventh Regiment Fund*, 774 N.E.2d 702, 710 (2002) (quoting *Pease v. Smith*, 61 N.Y. 477, 480-81 (1875)).  "Some affirmative act—asportation by the defendant or another person, denial of access to the rightful owner or assertion to the owner of a claim on the goods, sale or other commercial exploitation of the goods by the defendant—has always been an element of conversion."  *Seventh Regiment Fund*, 744 N.E.2d at 711.

Conversion claims have also arisen in cases involving transfer, where a defendant lawfully obtained initial possession of the plaintiff's property and then disposed of the property to a third party.  *See Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC*, 77 F. Supp. 3d 364, 371 (S.D.N.Y. 2015); *Regions Bank v. Wieder & Mastroianni, P.C.*, 526 F. Supp. 2d 411, 414 (S.D.N.Y. 2007) *aff'd,* 268 Fed. App'x 17 (2d Cir. 2008) (citing *MacDonnell v.*

*Buffalo Loan, Trust & Safe Deposit Co.,* 85 N.E. 801, 803 (1908)).  A survey of the transfer

cases commonly show a business agreement between the plaintiff and defendant, which

perpetuates the defendant's initial possession of the contested property.  In *Dynamic Worldwide*

*Logistics*, this Court stated that, as a transferor, when possession of the property by a defendant

was initially lawful, an action for conversion only arises if plaintiff made demands for return of

the property or a defendant wrongfully transferred or dispossessed of it before a demand was

made.  77 F. Supp. 3d at 371.  Therefore, although wrongful intent is generally not an element of

conversion, "a defendant who came into possession *lawfully* will be liable for transferring the

property only if the transfer was in some way wrongful."  *Regions Bank*, 526 F. Supp. 2d at 414

(emphasis added).

　　While the Gallery avers they are a transferor of the Painting, the designation does not

apply.  The Gallery relies principally on the Court's decision in *Dynamic Worldwide Logistics* to

support its position that, as a transferor, either wrongfulness or demand and refusal are required

for conversion.  However, the more rigorous conversion standard for the transfer of property

only applies if the defendant's initial possession was *lawful*.  *Dynamic Worldwide Logistics, Inc.*,

77 F. Supp. 3d at 371; s*ee also Glynwill Invs. v. Prudential Sec., Inc.*, No. 92 Civ. 9267 (CSH),

1997 WL 12802, at *3 (S.D.N.Y. Jan. 14, 1997) (citing *LeFebvre v. N.Y. Life Ins. & Annuity*

*Corp.*, N.Y.S.2d 695, 696 (3d Dep't 1995) ("[P]ossession of the property in that capacity being

unlawful, a demand and refusal was not necessary to establish a conversion, and thus was not a

condition precedent to bringing suit.").  In *Dynamic Worldwide Logistics*, plaintiff, a non-vessel-

operating common carrier, contracted with the defendant to deliver leather goods from China to

the Unites States.  *Id.* at 367.  Plaintiff then sued the defendant for conversion following their

failure to deliver bills of lading for the imported leather goods.  *Id.*  This Court found that the

defendant's initial possession of the leather goods was lawful because plaintiff's employee concededly authorized the delivery of the goods to the defendant.  *Id.* at 367-68.  Therefore, a demand for the return of the property or a wrongful subsequent transfer of the property to a third party was necessary to maintain a proper claim for conversion.  *Id.* at 369.  Not so here.

Unlike *Dynamic Worldwide Logistics*, Hicks did not contract with the Gallery.  Rather, the Gallery obtained possession of the Painting from their business arrangement with Hatch. Compl. ¶ 57; Wallace Decl., Exs. C-E.  Furthermore, Hicks alleges that she never conveyed ownership of the Painting to Dzubas, his children, or any other entity.  Compl. ¶ 41, 54. Therefore, the lawfulness of the Gallery's initial possession and sale of the Painting is disputed on the face of the Complaint, rendering any wrongfulness or demand and refusal requirement inapplicable to Hicks's conversion claim.

In opposition, Hicks maintains that the Gallery was an "auctioneer," but we find nothing in the Complaint that supports that designation.  New York courts have developed a separate branch of caselaw dependent on whether the defendant in a conversion claim is an "auctioneer." *See In re Vogel*, 871 N.Y.S.2d 894, 897 (Sur. Ct. 2009) (citing *Parker v. P&N Recovery of N.Y., Inc.*, 697 N.Y.S.2d 462, 466 (Civ. Ct. 1999)); *Caulfield v. Dano's Auto Clinic, Inc.*, No. 4742/2010 (RTG), 2016 WL 5858160, at *3 (N.Y. Sup. Ct. Mar. 15, 2016) (Trial Order).  While "auctioneer" is not expressly defined, the facts of these cases pertain to conversion claims based on unauthorized sales commenced at an auction.  Moreover, in New York Art and Cultural Affairs Law § 11.01(2) (Westlaw Mar. 3, 2021), the "term 'art merchant' includes an auctioneer who sells [fine art] at public auction [.]"  The Complaint makes no mention of the painting being sold at public auction and only describes the Gallery's actions as displaying, making available for sale, and selling the Painting.  Compl. ¶ 72.

However, Hicks relies on *Ruffalo v. Coffaro*, No. CV-87-1523 (JLC), 1989 WL 83397, (E.D.N.Y. July 11, 1989), which is on all fours with the Complaint.  In *Ruffalo*, the Eastern District of New York found that "a sale of another's property by one who assumes to be acting for the owner is a conversion when no authority to sell the property actually exists."  *Id.* at *2.  In *Ruffalo*, defendant art dealer sold plaintiff's Picasso under the mistaken belief they had the authorization to sell the artwork.  *Id.* at *3.  However, the authorization to sell the Picasso was granted by an intermediary art gallery, not by the plaintiff.  *Id.* at *2.  In fact, the plaintiff and defendant had no contractual business relationship involving the Picasso, *id.*, much like Hicks and the Gallery had no contractual business relationship involving the Painting.  There, the *Ruffalo* Court held that the defendant's "good faith but mistaken belief that he had the authority to sell is not a defense" to a conversion claim.  *Id.* at *3.  So, too, here.

The Gallery further argues that Hicks cannot state a claim for money in the fashion of the Gallery's sale proceeds.  However, this argument is irrelevant since the Complaint is not alleging a conversion of money; instead, the complaint expressly alleges the converted property is the Painting.  Compl. ¶ 1.  The Painting is mentioned sixty-five times throughout the Complaint whereas the Gallery's sale proceeds are not mentioned once.  Furthermore, Hicks also raises a claim of replevin against Doe for the express return of the Painting.  *Id.* ¶¶ 79, 82.

In sum, Hicks's Complaint sufficiently alleges that (1) she maintained ownership of the Painting, and (2) she did not voluntarily relinquish that ownership or authorize the possession and sale of the Painting by the Gallery to the exclusion of her ownership rights.  Because the facts alleged in Hicks's Complaint plausibly meet the elements of a claim for conversion under New York law, the Gallery's motion to dismiss for failure to state a claim is denied.

**D.   Equitable Doctrine of Laches**

The Gallery further argues that dismissal of Hicks's Complaint is proper under the

doctrine of laches.  Def.'s Mot. to Dismiss 18.  In particular, the Gallery asserts that dismissal is

warranted due to Hicks's unreasonable delay in bringing suit and the resulting prejudice to the

Gallery.  *Id.*  Hicks, however, argues that dismissal under laches cannot be decided on a motion

to dismiss since the pleadings alone cannot support the fact-intensive analysis required for

laches.  Pl.'s Resp. to Def.'s Mot. to Dismiss 18.  The Court agrees with Hicks.

Laches bars a party's claim in equity where the party has unreasonably delayed in a

prejudicial manner.  *See Greek Orthodox Patriarchate of Jerusalem v. Christie's, Inc.*, No. 98

Civ. 7664 (KMW), 1999 WL 673347, at *7 (S.D.N.Y. Aug. 30, 1999) (quoting *Robins Island

Preservation Fund, Inc. v. Southold Dev. Corp.*, 959 F.2d 409, 423 (2d Cir. 1992) ("Generally,

the principle of laches is applied where it is clear that a plaintiff unreasonably delayed in

initiating an action and a defendant was unfairly prejudiced by the delay.").  "The defense of

laches is an affirmative defense, which is generally not appropriately raised in a motion to

dismiss."  *Lennon v. Seaman*, 63 F. Supp. 2d 428, 439 (S.D.N.Y. 1999).  "However, in certain

circumstances, when the defense of laches is clear on the face of the complaint, and where it is

clear that the plaintiff can prove no set of facts to avoid the insuperable bar, a court may consider

the defense on a motion to dismiss."  *Id.*

In order to succeed under a laches defense, "Defendant must show that (1) Plaintiff knew

of the conduct of which it complains, (2) Plaintiff inexcusably delayed in taking action against

such conduct, and (3) Defendant would be prejudiced by the delay."  *Express Gold Cash, Inc. v.

Beyond 79, LLC*, No. 1:18-cv-00837 (EAW), 2019 WL 4394567, at *3 (W.D.N.Y. Sept. 13,

2019).  "[T]he claimant's reasonable diligence in locating the lost property is highly relevant to a

laches defense." *Greek Orthodox Patriarchate*, 1999 WL 673347, at *7; *see also Solomon R. Guggenheim Found. v. Lubell*, 569 N.E.2d 426, 431 (1991) (holding plaintiff's reasonable diligence will be considered in the context of the defendant's laches defense).  Moreover, the essential element of laches is prejudice.  *In re Flamenbaum*, 1 N.E.3d 782, 784 (2013). "Prejudice may be demonstrated by a showing of injury, change of position, loss of evidence, or some other disadvantage resulting from the delay."  *Reif v. Nagy*, 106 N.Y.S.3d 5, 22 (1st Dep't 2019) (internal quotations omitted).

The Gallery relies on *Greek Orthodox Patriarchate* where the Southern District of New York held that the record clearly evidenced a laches defense on summary judgment.  *Greek Orthodox Patriarchate*, 1999 WL 673347, at *11.  Absent conflicting facts, Judge Wood held that the record showed the claimants lack of diligence in tracking down the stolen texts exhibited an unreasonable delay that prejudiced the defendant.  *Id.* at *10.  Notably, as a motion for summary judgment, Judge Wood was able to consider the breadth of the record to evaluate the viability of the laches defense.  Here, the Court must look to the face of the Complaint for non-disputed facts showing unreasonable delay and resulting prejudice to the defendant.

At this juncture, the Court is not persuaded that the issue of prejudice can be resolved based solely on Hicks's Complaint.  On its face, Hicks's Complaint states that she knew the location of the Painting:  it hung near the entrance of the house she shared with Dzubas.  Compl. ¶ 40.  Affirming her knowledge, Hicks states that she did not retrieve the Painting upon her departure, and therefore, it remained at its original placement at the entrance to the house.  *Id.* ¶¶ 52- 53.  Accordingly, Hicks's knowledge of the Painting's location implicates both her due diligence in recovering the Painting and her delay in bringing this suit 29 years later.  *See Greek Orthodox Patriarchate*, 1999 WL 673347, at *7.  However, the Complaint does not clearly

show, as a matter of law, that the Gallery was prejudiced by Hicks's delay.  *See Martin v. Briggs*, 663 N.Y.S.2d 184, 199 (1st Dep't 1997) (holding that a 24-year delay might have prejudiced the defendants, but prejudice could not be determined as a matter of law).  "Granting a motion to dismiss on the basis of a laches defense is permissible only if all the facts necessary to the defense can be found on the face of the complaint."  *Express Gold Cash*, 2019 WL 4394567, at *4 (quoting *Lennon*, 63 F. Supp. 2d at 439).  To determine whether the Gallery was unduly prejudiced by the delay would require factual considerations that reach beyond the face of the Complaint.  Therefore, the Gallery's request for dismissal under the equitable doctrine of laches is denied as premature.

## IV.      CONCLUSION

For the reasons set forth above, the Gallery's motion to dismiss for lack of subject matter jurisdiction, for personal jurisdiction, and for failure to state a claim is DENIED.  The Gallery's motion for dismissal under the doctrine of laches is DENIED as premature.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 20.

SO ORDERED.

Dated:    March 16, 2021
          New York, New York

_____
          Edgardo Ramos, U.S.D.J.