UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIANNE HICKS,

                Plaintiff,

-against-

LESLIE FEELY FINE ART, LLC and JOHN DOE,

                Defendants.

**OPINION & ORDER**

20 Civ. 1991 (ER)

RAMOS, D.J.:

Abstract painter Marianne Hicks brings this action against Leslie Feely Fine Art, LLC (the "Gallery"), an art gallery located in New York City, and one of its buyers, John Doe, for conversion of a painting that the Gallery sold to defendant John Doe for $40,000.00 as a work of the abstract expressionist painter Friedel Dzubas. Hicks alleges that she and not Dzubas painted the work and further seeks replevin of it from Doe. Pending before the Court is Hicks' motion to compel the Gallery to disclose Doe's identity. For the reasons set forth below, the motion to compel is GRANTED.

I.     FACTUAL AND PROCEDURAL BACKGROUND

    A. Facts Alleged In Complaint

Hicks is an abstract painter who resides in Pennsylvania. Compl. ¶ 16 (Doc. 1). Dzubas was a renowned German-American abstract expressionist painter associated with the Color Field style, a post-World War II artistic movement. *Id.* ¶ 24; Affidavit of Wesley Frantz ("Frantz Aff."), Ex. 1 (Doc. 1-1). Dzubas became prominent in the 1950s and 1960s, and his paintings have sold for hundreds of thousands of dollars. Compl. ¶¶ 24-25. In approximately 1979, when

Dzubas was 65 years old and Hicks was a 26-year-old student at the School of the Museum of Fine Arts in Boston, Dzubas and Hicks met and began a romantic relationship. *Id.* ¶¶ 27, 29-30.

In approximately 1981, Hicks allegedly created a painting (the "Painting") that is the object of the instant suit. *Id.* ¶ 31. Approximately one year later, Hicks and Dzubas moved in together to a home in Cambridge, Massachusetts, with a shared art studio on the premises. *Id.* ¶¶ 35-36. Hicks brought the Painting with her, and she and Dzubas displayed it near the entrance of their home. *Id.* ¶ 40. Hicks did not convey ownership of the Painting to Dzubas. *Id.* ¶ 41.

Beginning in approximately 1990, Dzubas developed Parkinson's disease, and his health and mental capacity began to deteriorate. *Id.* ¶¶ 42-43. Hicks lived with him and cared for him until, with his worsening condition, Dzubas' adult children became increasingly involved in his financial and personal affairs. *Id.* ¶¶ 43-44. They encouraged him to end his relationship with Hicks and pursue a relationship with a different woman. *Id.* ¶¶ 44, 46. In 1991, Hicks was allegedly driven out of the home she shared with Dzubas by his children and new partner, Malinda Hatch. *Id.* ¶¶ 9, 46; Frantz Aff., Ex. 1 at 38 (Doc. 1-1). According to Hicks, she was only able to bring her living necessities, bed, and clothing when she moved to a new apartment in Somerville, Massachusetts. Compl. ¶ 47.

Despite the move, Hicks continued to use the art studio connected to the Cambridge house she had shared with Dzubas until she was denied access to the studio space by Dzubas' children and Hatch. *Id.* ¶¶ 49-50. They gave Hicks one day to retrieve her belongings from the art studio. *Id.* ¶ 52. Hicks did not feel welcome in the main house and did not go inside to retrieve the Painting. *Id.* ¶¶ 52-53. The Painting remained in the house following Hicks' departure. *Id.* ¶ 53.

After Dzubas' death in 1994, the Painting was included among Dzubas' artwork as part of Dzubas' estate. *Id.* ¶ 56. In 1995, Metro Warehouse in Cambridge, Massachusetts prepared a draft valuation of works of art in the estate, including the Painting, which it appraised at $7,000. Declaration of Judith Wallace in opposition to Motion to Compel ("Wallace Decl."), Ex. B at 63 (Doc. 45-2). The draft valuation indicated that the Painting was an oil on canvas work by

Dzubas dating from the late 1950s. *Id.* Dzubas' former partner, third party Hatch, acquired the Painting in the process of settling Dzubas' estate in 2003. Defendant's Memorandum of Law in opposition to Motion to Compel ("Def.'s Opp'n. to Mot. To Compel") at 17 (Doc. 47); Declaration of Leslie Feely in opposition to Motion to Compel ("Feely Decl."), Ex. A at 4 (Doc. 46-1); Declaration of Christopher Wasil in support of Plaintiff's Motion to Compel ("Wasil Decl."), Ex. A at 6 (Doc. 44-1). In 2007, Silverman Fine Art LLC prepared a fair market value appraisal of artwork in the Dzubas Estate, including the Painting, which it appraised at a value of $20,000.00. Wallace Decl. Ex. B at 60-62. Silverman Fine Art's appraisal did not include the title, date, or authorship of the Painting. *Id.*

In 2017, Hatch consigned the Painting, along with other works, to the Gallery for the purpose of displaying and selling the works. Compl. ¶ 57; Wallace Decl. Ex. B at 56-59. The Gallery listed the Painting as a 1951 piece by Dzubas and in May 2017, sold the Painting to Doe for $40,000. Compl. ¶¶ 14, 58-60; Wallace Decl. Ex. B at 54-55.

Hicks alleges that the Painting was created completely independently from, and without assistance by, Dzubas, and that any similarities are due to the fact that she too is an abstract painter, who was influenced by Dzubas. Compl. ¶¶ 32-33. Wesley Frantz ("Frantz"), Dzubas' studio assistant from 1980 to 1987, attests that the Painting could not have been painted by Dzubas in 1951 because of the type of paint used to create the Painting—Magna acrylic paint rather than oil paint—and the specific technique used to apply the paint to the canvas. Frantz Aff. ¶¶ 11-12, 22-23. Frantz also attests that, if he were able to examine the Painting, he would be able to determine the type of canvas used and whether it accords with the type of canvas Dzubas used in the 1950s. *Id.* ¶ 24.

**B. Procedural History**

On March 5, 2020, Hicks filed the instant Complaint against the Gallery and John Doe asserting two causes of action: (1) conversion against the Gallery and Doe, and (2) replevin against Doe. Compl. ¶¶ 69-82. Following an initial case management conference held on May

8, 2020, the Court granted the Gallery leave to file a motion to dismiss and ordered the parties to take jurisdictional discovery as to the value of artworks by Hicks. Tr. of 05/08/20 Hr'g 14:9–14 (Doc. 18). The Court declined to stay discovery. *Id.* 15:7–8.

On June 8, 2020, the Gallery filed a motion to dismiss the Complaint on four grounds: (1) lack of subject matter jurisdiction, (2) lack of personal jurisdiction, (3) failure to state a claim, and (4) laches. Def.'s Mem. in support of Mot. to Dismiss (Doc. 23). In the meantime, the parties conducted jurisdictional discovery to determine whether the value of the Painting met the jurisdictional minimum of $75,000. On June 10, 2020, Hicks requested a pre-motion conference, seeking an order compelling the Gallery to produce certain documents and information, and an extension of its deadline to respond to the Gallery's motion to dismiss. Doc. 24. Hicks objected to the Gallery's responses to her requests dated May 20, 2020, consisting of five interrogatories and five document requests, which Hicks contended were intended to discover evidence "probative of value." *Id.* at 2. The Gallery responded in part to Hicks' discovery requests with a redacted invoice showing the May 2017 sale price of the Painting but not the buyer's identity. *Id* at 2; Doc. 24 Ex. B. At a conference on June 24, 2020, the Court denied Hicks' request to compel the Gallery to disclose Doe's identity, finding that the discovery responses provided by the Gallery were "appropriate at this stage of the litigation." Tr. of 06/24/20 Hr'g 16:11–14 (Doc. 29). On August 17, 2020, Hicks requested another pre-motion conference, again seeking an order compelling the Gallery to provide Doe's identity and to respond fully to Hicks' discovery requests made on June 25, 2020. Doc. 35. The Gallery objected on the grounds that Hicks' discovery requests were untimely and that Doe's identity is "confidential and protected business information." Doc. 37 at 2. At a conference held on September 24, 2020, the Court again denied Hicks' motion to require the Gallery to reveal Doe's identity. Tr. of 09/24/20 Hr'g 9:3–9 (Doc. 38). The Court ordered the Gallery to supplement its responses to Hicks' June 25, 2020 discovery requests in light of the Court's order that the Gallery need not reveal Doe's identity. *Id.* 19:10–13. The Gallery submitted its responses to

Hicks' interrogatories and requests for production of documents on October 21, 2020. Wasil Decl. Exs. A-B.

On January 12, 2021, while the motion to dismiss was pending, and with the Court's leave, Hicks filed the instant motion to compel the Gallery to disclose the identity of John Doe. Mot. to Compel (Doc. 42). On February 2, 2021, the Gallery opposed Hicks' motion. Def.'s Opp'n. to Mot. to Compel.

On March 16, 2021, the Court denied the Gallery's motion to dismiss on the first three grounds and denied the Gallery's motion to dismiss based on the equitable doctrine of laches as premature. *See Hicks v. Feely Fine Art, LLC*, No. 20 Civ. 1991 (ER), 2021 WL 982298, at *11 (S.D.N.Y. Mar. 16, 2021) (Doc. 51). The Court held in part that, regardless of the May 2017 sale price of the Painting, it could not determine as a matter of law that the value of the Painting fell below the jurisdictional threshold and that instead the value of the Painting at the time of trial would be the proper measure of damages. *Id.* at *5-6. On March 30, 2021, the Gallery filed its answer, asserting four affirmative defenses, including failure to state a claim against Doe, as Hicks had not made a demand on him for return of the Painting, a required substantive element of a replevin claim. Doc. 52.

Under the scheduling order previously in place, fact discovery was due to close August 16, 2021, and all discovery was to close on November 29, 2021. Doc. 50. At a conference on August 12, 2021, the Court extended the deadline for all discovery to January 31, 2022. The parties exchanged interrogatories and requests for production of documents but remained at an impasse over the disclosure of Doe's identity.

## II.     LEGAL STANDARD

"Management of discovery lies within the broad discretion of the district court." *Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbitron, Inc.*, 278 F.R.D. 335, 338 (S.D.N.Y. 2011) (citations omitted). Federal district courts have broad discretion in deciding motions to compel. *See Grand Cent. Partnership, Inc. v. Cuomo*, 166 F.3d

473, 488 (2d Cir. 1999). The scope of discovery is generally limited to any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The information sought need not be admissible at trial as long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor,* 329 U.S. 495, 501 (1947)). However, the scope of Rule 26(b) is not unlimited, and Rule 26 has been amended over the years in order to strike "the proper balance between the need for evidence, and the avoidance of undue burden and expense." *Kaye v. New York City Health & Hosps. Corp.*, No. 18 Civ. 12137 (JPC) (JLC), 2020 WL 7237901, at *4 (S.D.N.Y. Dec. 9, 2020) (quoting *O'Garra v. Northwell Health*, No. 16 Civ. 2191 (DRH) (AYS), 2018 WL 502656, at *1 (E.D.N.Y Jan. 22, 2018)).

The burden of demonstrating relevance is on the party seeking discovery. *Fort Worth Employees' Retirement Fund v. JP. Morgan Chase & Co.,* 297 F.R.D. 99, 102-03 (S.D.N.Y. 2013) (citing *Trilegiant Corp. v. Sitel Corp.,* 272 F.R.D. 360, 363 (S.D.N.Y.2010); *Mandell v. Maxon Co.,* No. 06 Civ. 460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007)). If the information sought is relevant, then "[t]he party resisting discovery bears the burden of showing why discovery should be denied." *Cole v. Towers Perrin Forster & Crosby,* 256 F.R.D. 79, 80 (D. Conn. 2009). "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Melendez v. Greiner,* No. 01 Civ. 7888, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003). "Rather, a party resisting discovery has the burden of showing 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is

6

overly broad, burdensome or oppressive.'" *Fort Worth Employees' Retirement Fund*, 297 F.R.D. at 102-03 (quoting *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.,* 105 F.R.D. 16, 42 (S.D.N.Y. 1984)).

### III. DISCUSSION

#### A. Doe's Identity Is Neither Privileged Nor Confidential

Hicks requests that the Gallery disclose Doe's identity. Neither party argues that Doe's identity is protected by any privilege, and therefore Rule 26(b)(1)'s exemption of privileged information from discovery does not apply. Instead, the Gallery resists disclosing Doe's identity because "[t]he names of private clients are regarded as confidential, proprietary, valuable trade information." Def.'s Opp'n. to Mot. to Compel at 11. The Gallery maintains that "information on private clients and collectors is a valuable asset of art dealers" that is "closely guarded." *Id.* Furthermore, the Gallery cites owner Leslie Feely's decades of experience working with Dzubas and with collectors of his artwork, arguing that the Gallery's information about its client base of Dzubas collectors is a particularly valuable asset safeguarded by the Gallery, in accordance with standard practices in the art world. *Id.* at 10-14.

A claim without more that certain information is confidential is not a valid basis for withholding relevant information. *See, e.g.*, *Am. Rock Salt Co., LLC v. Norfolk S. Corp.*, 228 F.R.D. 426, 466 (W.D.N.Y. 2004) (overruling defendant's confidentiality objections where defendant had submitted only an affidavit asserting the confidential nature of agreements at issue, and finding that "[a]bsent a showing that [third parties] have stated they object to Plaintiff's request for the agreements, Defendants are without standing to assert the alleged confidentiality or non-disclosure provision as a ground for refusing production"); *Chembio Diagnostic Sys., Inc. v. Saliva Diagnostic Sys., Inc.*, 236 F.R.D. 129, 136 (E.D.N.Y. 2006) (stating that "[t]here is no absolute privilege for trade secrets and similar confidential information," but that a district court may enter a protective order to protect trade secrets); *Plumbers & Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc.*, 278

F.R.D. 335, 339 (S.D.N.Y. 2011) (holding that Rule 26 required plaintiff to disclose the identities of confidential informants whose allegations were cited in its complaint). Even documents that are subject to third-party confidentiality agreements or understandings may be discoverable under Rule 26. *Winfield v. City of New York*, No. 15 Civ. 05236 (LTS) (KHP), 2018 WL 716013, at *16 (S.D.N.Y. Feb. 1, 2018), *decision set aside in part sub nom. Noel v. City of New York*, No. 15 Civ. 05236 (LTS) (KHP), 2018 WL 6786238 (S.D.N.Y. Dec. 12, 2018) ("Under Rule 26, Plaintiffs are entitled to discovery of all nonprivileged and responsive documents, including documents that may be subject to a third-party confidentiality agreement or understanding."); *see also In Re Subpoena Duces Tecum Served on Bell Commn'cns Res., Inc.*, No. MA-85, 1997 WL 10919, at *3 (S.D.N.Y. Jan. 13, 1997) (collecting cases that hold confidentiality agreements cannot serve as protection from discovery requests).

Here, the Gallery does not cite any concrete confidentiality agreement between itself and Doe, instead pointing to the general code of discretion in the art world. The Gallery maintains that owner Leslie Feely's knowledge of Dzubas collectors is "extremely valuable commercial information," and that in general art collectors may not wish to reveal that they own or are selling certain artwork in order to avoid the risk of burglary or the disclosure of personal financial circumstances. Feely Decl. ¶¶ 19, 29 (Doc. 46). The Gallery conflates discretion and confidentiality. The assertion, without more, that the Gallery's client base information is valuable and proprietary is insufficient to shield Doe's identity from discovery. *See Ahern v. Trans Union LLC Zale Corp.*, No. 301 Civ. 02313 (DJS), 2002 WL 32114492, at *4 (D. Conn. Oct. 23, 2002) ("That Transunion considers documents proprietary and confidential falls short of establishing grounds for a protective order or any recognized immunity from discovery. More than a mere assertion is required to perfect an exemption or immunity from discovery.").

In further support of its argument that Gallery information is confidential, the Gallery relies on non-compete or non-disclosure agreements executed between art galleries and their employees. The Gallery includes a copy of the standard Confidentiality Agreement that employees are required to execute as a condition of employment, which designates customer

information, including names of customers, as confidential.  Feely Decl. Ex B (Doc. 46-2).  The Confidentiality Agreement is executed between employees and the Gallery.  Feely Decl. ¶ 31.  The Gallery does not contend that Doe is an employee of the Gallery, nor that the Confidentiality Agreement binds the Gallery, as opposed to employees, as to disclosure of Doe's identity in this action.

The Gallery also points to two cases regarding alleged violations of non-compete agreements by art gallery employees.  Def.'s Opp'n. to Mot. to Compel at 9-10.  Neither has any bearing on this case.  *Heritage Auctioneers & Galleries, Inc. v. Christie's Inc.*, involved in part a claim against individual auction house employees for breach of duty of loyalty and breach of contract.  No. 651806/2014, 2018 WL 902308, at *1 (N.Y. Sup. Ct. Feb. 15, 2018).  The New York County Supreme Court found plaintiff Heritage Auctioneers' non-compete and non-solicitation covenants to be enforceable as to an individual employee.  *Id.* at *8.  Similarly, *Lehman Maupin LLC v. Yoo,* No. 18 Civ. 11126 (AJN) (S.D.N.Y. filed Nov. 29, 2018), a case which the plaintiff gallery voluntarily dismissed with prejudice, involved a former gallery employee's alleged violations of the Defend Trade Secrets Act and of a confidentiality agreement.  *See* First Amended Complaint, No. 18 Civ. 11126 (AJN) (Doc. 14).  Here, no parties allege any breach of confidentiality or non-compete agreements by any Gallery employees.  No non-compete clause is at issue in this case, nor any alleged violation of trade secrets.  The Gallery's standard employee Confidentiality Agreement is therefore irrelevant to disclosure of Doe's identity in this action.  Without any assertion of a confidentiality agreement between Doe and the Gallery—even proof of which, as described above, would not necessarily be sufficient to shield the disclosure of Doe's identity—the Gallery's reliance on its employee Confidentiality Agreement to demonstrate the importance of confidentiality in the art world is misplaced.

In similar replevin cases involving allegedly converted artwork, New York courts have ordered the disclosure of the identities of subsequent purchasers of the artwork.  Hicks cites *In re Lumerman*, 856 N.Y.S.2d 469 (N.Y. Surr. Ct. 2008) and *Alexander v. Spanierman Gallery, LLC*, 822 N.Y.S.2d 506 (1st Dep't 2006), both of which involved pre-action motions for disclosure of

purchasers' identities under CPLR § 3102(c). Pl.'s Mem. in support of Mot. to Compel at 14-17. In *Lumerman*, plaintiffs claimed ownership of several works of art by abstract expressionist painter Willem de Kooning, which had been consigned to defendant auction houses Christie's and Sotheby's and sold to unknown good-faith purchasers. 856 N.Y.S.2d at 472. The Surrogate's Court granted plaintiffs' motion to compel Sotheby's and Christie's to respond to discovery requests for disclosure of the purchasers' identities because "the identity of those individuals and/or entities who purchased some of the subject artwork from Sotheby's and Christie's is material and necessary to the prosecution of the plaintiffs' causes of action against them," and without such information, "the plaintiffs cannot identify those individuals or entities who may currently possess some of the subject artwork." *Id*. at 473-74. Although a decision by the New York Surrogate's Court is not binding on this Court, the *Lumerman* court's reasoning is instructive as it involved substantially the same situation as here, and as this Court has previously noted is "on all fours factually," Tr. of 09/24/20 Hr'g 5:20–21. Similarly, in *Alexander v. Spanierman Gallery, LLC*, the Appellate Division, First Department affirmed the New York County Supreme Court's order that disclosure of identity of the individual who purchased a sculpture allegedly stolen from the purported owner's home was warranted under CPLR 3102(c). 822 N.Y.S.2d at 507. *Cf. In re Peters*, 821 N.Y.S.2d 61, 66-67 (1st Dep't 2006) (holding that petitioner had established a valid basis for seeking the identity of the good-faith purchaser of the allegedly converted Edvard Munch painting at issue, but reversing lower court's discovery order because the painting had not been converted in the first instance).

The Gallery relies on dicta in the New York Court of Appeals case *William J. Jenack Estate Appraisers & Auctioneers, Inc. v. Rabizadeh*, 22 N.Y.3d 470 (2013) for the proposition that there is a "legitimate commercial practice of confidentiality of parties to art transactions." Def.'s Opp'n. to Mot. to Compel at 9. *Jenack* concerned the New York statute of frauds and the record-keeping requirements at auction, where the name of the seller was not included on the auctioneer's records. 22 N.Y.3d at 474. The *Jenack* court decided in part that the inclusion of the seller's agent's name on the auction records, rather than the seller's, satisfied the

10

requirements of the statute of frauds. *Id.* at 479. In dicta, the Court of Appeals acknowledged policy reasons why sellers at auction may wish to remain anonymous, noting that the auction house and amici had argued "that the auction business is important to New York State and that it is a time honored and necessary custom and practice of auction houses to maintain the confidentiality of the seller." *Id.* at 478. Amici in their brief had made a more sweeping argument for the importance of confidentiality in the art market in general, arguing that requiring the disclosure of parties to sales of artwork "could have a devastating effect on New York's art market – which has become the leading international art market in part because its reliable auction and private art market respects the discretion of participants who value their privacy for security and many other legitimate and important reasons." Brief for Sotheby's, Inc. and Art Dealers Association of America, Inc. as Amici Curiae Supporting Appellants, William J. Jenack Estate Appraisers and Auctioneers, Inc., v. Rabizadeh, 22 N.Y.3d 470 (2013), 2013 WL 8023771 (N.Y.), at 4-5. The Court of Appeals did not adopt amici's broad argument as to the importance of confidentiality in the New York art market in general, instead limiting its consideration to the context of sellers at auction. *Jenack*, 22 N.Y.3d at 478. Although the *Jenack* decision post-dates *Lumerman*, *Alexander*, and *Peters*, the *Jenack* court limited itself to the auction market and did not overturn the earlier cases deciding the disclosure of the identities of subsequent purchasers of works of art. Accordingly, nothing in *Jenack* prevents the disclosure of Doe's identity.

### B. Doe's Identity is Relevant to Hicks' Claims

Having determined that no provision of Rule 26(b)(1) bars disclosure of Doe's identity, the Court turns to the question of relevance. As is clear to both parties, Hicks' action in replevin fails without Doe. "Demand upon, and refusal of, the person in possession of the chattel to return it [are] essential elements of a cause of action in replevin." *Peters,* 821 N.Y.S.2d at 65; *see also Shiotani v. Walters*, No. 10 Civ. 1375 (RJS), 2012 WL 6621279, at *3 (S.D.N.Y. Dec. 3, 2012), *aff'd*, 555 F. App'x 90 (2d Cir. 2014). Under New York law, the statute of limitations for an action in replevin to recover property from a good faith purchaser begins to run only after the

11

owner demands the return of the property and the possessor refuses its return.  *See, e.g.*, *Solomon R. Guggenheim Foundation v. Lubell*, 77 N.Y.2d 311, 317-18 (1991); *Sanchez v. Univ. of Pennsylvania Museum of Archaeology and Anthropology*, No. 04 Civ. 1253 (JSR), 2004 WL 1621184, at *1 (S.D.N.Y. July 20, 2004).  A demand and refusal are required in such cases to provide the possessor with "an opportunity to deliver the property to the true owner" before his possession is considered wrongful.  *State v. Seventh Regiment Fund, Inc.,* 98 N.Y.2d 249, 260 (2002) (citations omitted); *Lubell,* 77 N.Y.2d at 318.  Hicks has no replevin claim unless and until she makes a demand for the Painting, and she requires Doe's identity in order to do so.

Hicks further argues that she requires access to the Painting in order to examine it and determine authorship.  Pl.'s Mem. in support of Mot. to Compel at 19.  Hicks alleges that differences between the Painting and Dzubas' other works bear out her claim that she and not Dzubas created the Painting.  Compl. ¶ 68.  In his affidavit attached to the Complaint, Frantz attests that the type of paint used, the manner of the application of the paint, and possibly even the type of canvas used indicate that the Painting is not a Dzubas.  Frantz Aff. ¶¶ 11-12, 22-24.  In a similar action in this district for replevin of an oil painting, where the painting had been converted and the original owners left with a forgery of the painting, the trial court considered the testimony of several archivists, experts, and analysists, including a witness whose company had performed a forensic analysis on a copy of the painting.  *Abbott Lab'ys v. Feinberg*, 506 F. Supp. 3d 185, 189 (S.D.N.Y. 2020).  Considering that the type of paint, canvas, and manner of application of paint may be relevant to the authorship of the Painting, Hicks is correct that a physical examination or forensic analysis of the Painting may be relevant to determining authorship.  Pl.'s Mem. in support of Mot. to Compel at 19.  Expert analysis of the paint and canvas will likely require access to the physical Painting, not only photographs or reproductions of it.  Without Doe's identity, Hicks is unable to locate the Painting, much less seek expert analysis of it.

Doe's identity is therefore key to Hicks' claims, and Hicks has met her burden to show relevance, under the broad standard of Rule 26(b)(1).  Therefore, the burden shifts to the Gallery

to show why Hicks' discovery requests for disclosure of Doe's identity should be denied. The Gallery cannot meet that burden. Although the Gallery protests that Doe has no relevant information about either the creation of the Painting or the value of Hicks' artwork, Def.'s Opp'n. to Mot. to Compel at 15-16, the Gallery cannot show that the Painting itself, which is or was under Doe's control, is irrelevant to this action. The Gallery also argues that Doe's identity has no bearing on the case because Hicks has not made a demand upon Doe for the return of the Painting, which is a required substantive element of a replevin claim. *Id.* at 21. Without knowing Doe's identity, Hicks is obviously unable to make such a demand, but that does not necessarily invalidate her claim. The *Lumerman*, *Alexander*, and *Peters* courts all agreed that putative owners of artwork, who did not know the identities of the subsequent possessors of the artwork, were entitled to those possessors' identities as a threshold matter in order to bring actions in replevin. Finally, the Gallery contends that Hicks' strategy in seeking Doe's identity is only to "cast aspersions on the Painting and Gallery and cause litigation expense." *Id.* at 18. While the burden of litigation is not one to be taken lightly, the Gallery has not shown that revealing Doe's identity is "overly broad, burdensome or oppressive" such that the Gallery may shield Doe's identity from Hicks' discovery requests. *Fort Worth Employees' Retirement Fund*, 297 F.R.D. at 102.

### C. Hicks' Discovery Requests

Having determined that Hicks' request for Doe's identity is relevant and within the scope of discovery, the Court reviews the requests for production of documents and interrogatories at issue. At the September 24, 2020 conference, the Court directed the Gallery to submit amended responses to Hicks' interrogatories and requests for production of documents. Tr. of 09/24/20 Hr'g 18:23–19:13. On October 21, 2020, the Gallery submitted its responses to Hicks' five interrogatories and five requests for production of documents. Wasil Decl. Exs. A-B. Hicks' motion seeks to compel the Gallery to respond to its interrogatories and requests to identify Doe and to amend its prior responses to the extent that the Gallery withheld information or documents

13

based on its objection to revealing Doe's identity.  Pl.'s Mem. in support of Mot. to Compel at 20.

Interrogatory 1 requests the names of all witnesses with knowledge of relevant information, including John Doe.  The Gallery responded with the names of seven individuals and three entities.  Wasil Decl. Ex. A. at 6-7.  The Gallery did not provide Doe's name.  The Gallery is directed to respond completely to Interrogatory 1.

Interrogatories 2, 3, and 4 request the Gallery to identify and describe documents in the Gallery's possession, custody, or control relating to the sale of the Painting to Doe, any determinations of the Painting's appraisal or value, and any analysis or examination of the Painting for the purpose of determining whether the Painting is a Dzubas.  *Id.* at 7-8.  The Gallery responded in part and objected in part to Hicks' interrogatories on the grounds that they exceed the scope of Local Civil Rule 33.3.  *Id.*  Local Civil Rule 33.3(a) provides in part that "[I]interrogatories will be restricted to those seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents . . ."  Considering that the Gallery has already provided substantive responses to Interrogatories 2, 3, and 4, the Gallery need not respond further.  Interrogatory 5 requests, in the event Doe no longer owns or possesses the Painting, the names of individuals or entities who subsequently owned or possessed the Painting.  Because Interrogatory 5, which requests the names of individuals or entities with knowledge of information relevant to the action, appropriately falls within the scope of Local Civil Rule 33.3, the Gallery is directed to respond completely.

Document Request 1 seeks all documents relating to the sale and transfer of the Painting to Doe.  Wasil Decl. Ex. B at 5.  The Gallery responded in part that "[c]ommunications with the purchaser of the Painting are confidential and proprietary business information that are irrelevant to this action."  *Id.* at 6.  The Gallery's contention that communications with Doe are irrelevant does not stand, and the Gallery is directed to supplement its response to Hicks' requests for

documents relating to the sale and transfer of the Painting to Doe. As to Document Requests 2, 3, 4, 5, and 6, to the extent that the order to disclose Doe's identity changes the Gallery's response to these requests, the Gallery is directed to supplement its responses.

### IV.     CONCLUSION

For the reasons set forth above, Hicks' motion to compel is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 43.

It is SO ORDERED.

Dated: August 13, 2021
      New York, New York

_____
Edgardo Ramos, U.S.D.J.